OPINION OF THE COURT

Per Curiam.

Based on the sale of two films to an undercover New York, City police officer, defendant was indicted on two counts of promoting an obscene sexual performance by a child (Penal Law, § 263.10) and two counts of promoting a sexual performance by a child (Penal Law, § 263.15). Prior to trial he moved to dismiss the charges on the ground, among others, that the latter statute (Penal Law, § 263.15) was unconstitutional. The motion was- denied. A jury subsequently acquitted the defendant of the obscenity charges, but found him guilty of both counts of promoting a sexual performance by a child.
The Appellate Division affirmed the conviction, without opinion. The defendant appeals. The primary question is whether section 263.15 of the Penal Law on its face infringes rights guaranteed by the First Amendment.[1]
At the outset we note that where First Amendment rights are in issue, a party generally has standing to challenge a statute on its face, that is, as applied to other cases (Broadrick v Oklahoma, 413 US 601, 611). Although this type of broad attack is more limited when the statute regulates or proscribes conduct as opposed to “pure speech” (ibid., at pp 614-615), the statute at issue here is clearly aimed at books, films and other traditional forms of expression (see Penal Law, § 263.00, subd 4) as is evident from the defendant’s indictment and conviction.
*678 Section 263.15 of the Penal Law is part of a statutory scheme enacted in 1977. The stated purpose is to protect children from exploitation in sexual performances (L 1977, ch 910, § 1). The use of a child less than 16 years of age in a sexual performance is prohibited by section 263.05 of the Penal Law. Those who promote such performances are also subject to prosecution. Section 263.10 of the Penal Law makes it a class D felony to promote an obscene sexual performance involving a child. Section 263.15 of the Penal Law provides a similar penalty for promoting any sexual performance by a child.[2]
It is evident from the statutory scheme that the statute at issue in this case (Penal Law, §263.15) is not directed at obscene performances which, as noted, are proscribed by the preceding section (Penal„Law, § 263.10). In fact if section 263.15 serves any independent purpose, its goal must be to prohibit nonobscene sexual performances involving children. Thus on its face the statute would prohibit the showing of any play or movie in which a child portrays a defined sexual act, real or simulated, in a nonobscene manner. It would also prohibit the sale, showing, or distributing of medical or educational materials containing photographs of such acts. Indeed, by its terms, the statute would prohibit those who oppose such portrayals from providing illustrations of what they oppose. In short, the statute would in many, if not all, cases prohibit the promotion of materials which are traditionally entitled to constitutional protection from government interference under the First Amendment.
A court should, of course, interpret a statute so as to avoid constitutional infirmities, if at all possible (see, e.g., Matter of Lorie C., 49 NY2d 161, 171). In this case, however, it is not possible to save section 263.15 by limiting its *679 application to those who promote obscene performances. The fact that such activity is already proscribed by section 263.10 indicates that the Legislature did not intend the statute now before us to be similarly limited in its application. To read the two statutes as covering the exact same activity would, in any event, effectively invalidate section 263.15 by rendering it meaningless.
Nevertheless, the District Attorney urges that “the issue here is not one of censorship. Rather, promotion of these materials is prohibited in order to protect the children from the sexual exploitation necessarily involved in the production of such materials.” In other words the purpose of the statute is not to protect the audiences from viewing offensive materials, but to protect the performers from being exploited by removing the commercial incentive for such productions. Given that objective it is urged that any question as to whether the material is obscene is not determinative because the Legislature could reasonably conclude that the effect on a child is no less damaging when the finished product happens not to be obscene.
By the same token the effect on freedom of expression is the same whether the government bluntly seeks to censor what it finds offensive, or more benignly acts to protect the health and welfare of the performers. Thus no matter what the government’s objective, First Amendment standards remain applicable whenever the effect of a government regulation is to curtail protected modes of expression (see, e.g., People v Remeny, 40 NY2d 527). However, as the District Attorney notes, First Amendment rights are not absolute and may on occasion be outweighed by superior governmental interests.
The State has a legitimate interest in protecting the welfare of minors within its borders, and, at times, that interest may transcend First Amendment concerns (see, e.g., Prince v Massachusetts, 321 US 158). The statute at issue in this case would go further, if as the District Attorney urges it is designed to protect children employed in the making of plays, films and books. With respect to recorded performances or photographs the statute draws no distinction between those made in this State and those made elsewhere. *680 Anyone who promotes such materials would be subject to prosecution even though the act recorded may have occurred in another State or country where such conduct may not be prohibited. It applies equally to a live performance of a Broadway play and a filmed report of New Guinea fertility rites. Indeed in this case defendant’s conviction did not rest on any contention that the film was made in this State.[3] To the extent the statute would purport to regulate the sexual performances of children throughout the world there is some question as to whether that goal, however commendable, necessarily comes within the police powers of the State of New York.
Equally troublesome is the means adopted by the State to accomplish its purpose. The State contends, in essence, that it may prohibit the sale, showing, distribution, or other promotion of any film, or other visual materials, whenever the making of the film necessarily involved a violation of some other law designed to protect the performers, at least youthful performers, from a danger to their health and well-being. Assuming, without deciding, that the Legislature generally has the power to do this consistent with the First Amendment, the fact remains that it has not done so uniformly in this. State. Section 263.15 does not prohibit the knowing sale or promotion of any film, or other item, in which a child has performed a dangerous stunt or where production required a child to engage in any of the numerous activities which the Legislature in the exercise of its police power has determined is dangerous to the health or well-being of child employees or employees generally (see, e.g., Penal Law, § 260.10, subd 1; Labor Law, § 130 et seq.; Education Law, § 3215 et seq.; § 3228 et seq.; cf. Penal Law, § 245.05, subds 2, 3). The severe penalties imposed by section 263.15 of the Penal Law are reserved for those who promote plays, films, books and photographs, dealing with adolescent sex in a nonobscene manner. Thus to the extent that section 263.15 is designed to protect child employees from engaging in acts which the Legislature has found to be dangerous to their well-being the statute is “strikingly *681 underinclusive” (Erznoznik v City of Jacksonville, 422 US 205, 214). In short, the statute discriminates against films and other visual portrayals of nonobscene adolescent sex solely on the basis of their content, and since no justification has been shown for the distinction other than special legislative distaste for this type of portrayal, the statute cannot be sustained (Erznoznik v City of Jacksonville, supra, at p 215).
In conclusion it is important to emphasize that the statute considered in this case (Penal Law, § 263.15) does not deal with child pornography. Those who employ children in obscene plays, films and books, are still subject to prosecution as are those who sell or promote such materials (see Penal Law, §§ 263.05, 263.10). We merely hold that those who present plays, films, and books portraying adolescents cannot be singled out for punishment simply because they deal with adolescent sex in a realistic but nonobscene manner.
Accordingly, the order of the Appellate Division should be reversed and the indictment dismissed.

. A Federal court found the statute unconstitutional in St. Martin’s Press v Carey (440 F Supp 1196). Although that judgment was set aside on appeal on the ground that there was an insufficient likelihood of prosecution (605 F2d 41), that cannot be said in this case.

. Section 263.15 of the Penal Law states: “A person is guilty of promoting a sexual performance by a child when, knowing the character and content thereof, he produces, directs or promotes any performance which includes sexual conduct by a child less than sixteen years of age.” The definitions provided in section 263.00 of the Penal Law indicate that “sexual conduct” includes specified acts real or simulated (subd 3), and that a performance includes any play, motion picture, photograph, dance and “any other visual representation exhibited before an audience” (subd 4).

. Neither was there any contention that the film was made after the statute went into effect.